# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

Kathleen M Brooks, Individually and as Personal
Representative of the ESTATE OF PATRICK
M HIGDON, deceased, and the ESTATE OF
MARGARET M HIGDON a/k/a MARGARET
MARY BROOKS HIGDON, deceased, et al.,

        Plaintiffs,

v.                                                             Case No. 06-C-0996

General Casualty Company of Wisconsin, et al.,

        Defendants.

## DECISION AND ORDER

       This matter comes before the court on Arby Construction's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the portions of plaintiffs' Amended Complaint which assert claims under the Michigan Wrongful Death Act ("Michigan Act"), MCL 600.2922(6). Specifically, Arby Construction, along with other defendants who have joined its motion, contend that Wisconsin law should govern the recovery of wrongful death damages in this action. In response, plaintiffs argue that although Wisconsin law should apply to determine the defendants' liability, Michigan law should govern the recovery of wrongful death damages. Michigan and Wisconsin law differ with regard to who is eligible to seek wrongful death damages, as well as the amount of damages potentially recoverable.

       The parties also dispute what impact the choice of law determination should have on the claims asserted in this case. Arby requests that the court dismiss all wrongful death claims asserted by the plaintiffs because the Amended Complaint states that the claims have been brought pursuant

to the Michigan Act. Plaintiffs claim that even if Wisconsin law governs the damages available, the court should not dismiss claims that would constitute a valid wrongful death cause of action under Wisconsin's Wrongful Death Statute ("Wisconsin Statute"), Wis. Stat. § 895.04.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court views all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The relevant facts as alleged in the Amended Complaint are set forth below.

**I. Background**

This case arises out of a propane gas explosion at defendant Cedar Grove's resort in Ellison Bay, Wisconsin. A gas line that serviced the resort was allegedly ruptured by defendant Arby Construction while Arby was excavating or boring in the area to prepare for the installation of underground electrical facilities. Propane gas leaking from the pipe then accumulated in or under the resort where it later ignited, causing the explosion that killed Patrick M. and Margaret M. Higdon and injured their three children and other family members. Defendants, in addition to Cedar Grove and Arby, include the various entities involved in the installation of the propane gas line or the excavation that damaged it, and their insurers. All non-insurer defendants are Wisconsin corporations or other entities engaged in substantial business activities within the State of Wisconsin. All plaintiffs are residents of Michigan who were guests at the resort at the time of the explosion. In connection with the explosion, plaintiffs assert multiple tort claims against defendants

2

under Wisconsin law. However, plaintiffs claim they are entitled to recover wrongful death damages in accordance with Michigan law. Wrongful death damages are sought on behalf of the estates of Patrick M. Higdon and Margaret M. Higdon, their three minor children, and Margaret Higdon's mother, father, and two of her siblings.

**II. Analysis**

**A. Choice of Law**

As the dispute between the parties suggests, the difference between Wisconsin and Michigan law is significant with respect to the recovery of wrongful death damages, and constitutes a genuine conflict of law. Under the Michigan Act, there is no limit to the monetary amount of a damage award and the persons entitled to recover may include the spouse, children, descendants, parents, grandparents, and siblings of the deceased. MCL 600.2922(3). Additional damages for the deceased's conscious pain and suffering, medical bills, and funeral and burial expenses may be awarded and distributed to the estate. *Id*.

Wisconsin law also allows for the recovery of damages for the deceased's conscious pain and suffering, as well as funeral and burial expenses, without limitation. However, the Wisconsin Statute permits recovery of damages by relatives in a certain hierarchy, such that when a decedent leaves no surviving spouse, but is survived by minor children, a claim for wrongful death damages belongs only to those children and no other relatives. Wis. Stat. § 895.04(2). Such children may recover damages for both their pecuniary loss and the loss of the decedent's society and companionship. However, wrongful death damages for lost society and companionship cannot exceed $350,000 per occurrence in the case of a deceased adult. Wis. Stat. § 895.04(4).

3

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law." *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). In Wisconsin, courts use two tests to determine which state's laws should apply. The first requires the court to "judge 'whether the contacts of one state to the facts of the case are so obviously limited and minimal that application of that state's law constitutes officious intermeddling.'" *Beloit Liquidating Trust v. Grade*, 2004 WI 39, ¶ 24, 270 Wis. 2d 356, ¶ 24, 677 N.W.2d 298, ¶ 24 (2004) (quoting *American Standard Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 369 N.W.2d 168 (1985)). "By its terms, this is not a pure contacts-balancing test, but an approach that says merely minuscule contacts with another state will not justify the application of that state's law." *Love v. Blue Cross and Blue Shield of Georgia, Inc.*, 439 F. Supp. 2d 891, 892 (E.D. Wis. 2006).

The second test comes into play if another state's contacts with the facts of the case are not so limited and minimal such that application of the other state's law would amount to "officious intermeddling." *Drinkwater v. American Family Mut. Ins. Co.*, 2006 WI 56, ¶¶ 40-42, 290 Wis. 2d 642, 714 N.W.2d 568. In that event, the court is to consider the following five factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Beloit*, 2004 WI 39, ¶ 25. "The appropriate law, unless the above factors clearly displace it, is the law of the forum." *Schimpf v. Gerald, Inc.*, 52 F. Supp. 2d 976, 1002 (E.D. Wis. 1999) (citing *Hunker v. Royal Indem. Co.*, 57 Wis. 2d 588, 599, 204 N.W.2d 897 (1973)). I conclude that under either test, Wisconsin law should govern the availability of wrongful death damages in this case.

Applying the first test, I conclude that the application of the Michigan Act would constitute officious intermeddling. Wisconsin courts have held that a plaintiff's residency is an insufficient

contact to support the application of the law of the plaintiff's home state. For example, in *Burns v. Geres*, the Wisconsin Court of Appeals held that Arizona law should apply where a slip and fall injury took place in Arizona on property owned by an Arizona corporation, even though the plaintiff was a resident of Wisconsin and the defendant corporation coincidently conducted some business there. 140 Wis. 2d 197, 409 N.W.2d 428 (Wis. Ct. App. 1987). The court held that "to apply Wisconsin law would . . . violate the most basic principles of federalism." *Id.* at 430-31. In a case involving a slip and fall accident in Illinois, the Wisconsin Court of Appeals likewise held in an unpublished decision that the application of Wisconsin law would constitute officious intermeddling where the only Wisconsin contacts were the plaintiff's residency and the fact that the alleged tortfeasor operated one of its facilities in Wisconsin. *Johnson v. Travelers Ins. Co.*, 1992 WL 142249 (Wis. App. April 14, 1992). In *Beloit*, the Wisconsin Supreme Court described a company's incorporation and filing of bankruptcy in Delaware as "isolated interaction" with the state, concluding that the application of Delaware law would be officious intermeddling in light of such limited contacts. 2004 WI 39, ¶ 24.

In the present case, the contacts with the nonforum state are similarly limited. Defendants' allegedly tortious conduct and the explosion took place in Wisconsin. Michigan's contact with the facts of this case is limited to the residency of the plaintiffs and the fact that the estates of the decedents are being probated there.[1] Such contact is minimal and isolated, and does not justify the application of Michigan law.

---

[1] Michigan law provides that the venue for testacy or appointment proceedings is determined by the county in which the decedent was domiciled at the time of death, and treats the terms "residence" and "domicile" as synonymous terms in the context of probate proceedings. *In re Fox's Estate*, 3 Mich. App. 501, 142 N.W.2d 866 (Mich. App. 1966). Therefore, the probate of the decedents' estates in Michigan flows naturally from residency and is no more significant a contact.

5

It is true that in *State Farm Mut. Auto. Ins. v. Gillette*, 2002 WI 31, 251 Wis. 2d 561, 641 N.W.2d 652, the Wisconsin Supreme Court held that Wisconsin's law governing recovery for pain and suffering resulting from an automobile accident applied in an action brought by Wisconsin residents against the Wisconsin driver's insurer even though the accident occurred in the Canadian Province of Manitoba. But *Gillette* was an action for benefits due under the underinsured motorist coverage of an insurance policy issued in Wisconsin to a Wisconsin resident. In concluding that Wisconsin had the most significant contacts with the case, the Court emphasized that "Wisconsin is the jurisdiction where the injured persons reside and where the insurance policy was issued by a Wisconsin insurance company to Wisconsin insureds." 641 N.W.2d at 647. None of these facts are present in this case.

Plaintiffs' argument that *Branyan v. Alpena Flying Service, Inc.*, 65 Mich. App. 1, 10, 236 N.W.2d 739, 744 (1975) supports a contrary finding is also unpersuasive. The Michigan Court of Appeals in *Branyan* applied different choice of law principles than I am required to apply in this case, and addressed what law should apply where a Michigan owned aircraft crashed in Virginia, resulting in the death of Michigan citizens. The court held that because the only contact with Virginia was that the plane crash took place within its borders, "no Virginia concern" was involved, and "all governmental interest" in the case belonged to Michigan. *Id.* In contrast, plaintiffs admit Wisconsin is a "substantially concerned" jurisdiction in the present case. (Br. Opp. Mot. Dismiss 13.) Furthermore, the Supreme Court of Michigan has since held that a "plaintiff's residence, with nothing more, is insufficient to support the choice of a state's law." *Sutherland v. Kennington Truck Service, Ltd.*, 454 Mich. 274, 562 N.W.2d 466 (Mich. 1997) (citing *Home Ins. Co. v. Dick*, 281 U.S. 397, 408 (1930); *John Hancock Mut. Life Ins. Co. v. Yates*, 299 U.S. 178 (1936)). Given the limited

6

nature of the contact between Michigan and the facts of this case, I am satisfied that the application of the Michigan Act would constitute officious intermeddling.

Applying the five factors of Wisconsin's second test, I reach the same result. The first factor involves the predictability of results. Plaintiffs argue that this factor has little relevance here (Br. Opp. 11), relying on the Wisconsin Supreme Court's statement in *Conklin v. Horner* that "a tort which is unintended can never, by definition, be the subject of advanced planning with reference to a particular state's law." 38 Wis. 2d 468, 478, 157 N.W.2d 579, 584 (Wis. 1968). However, that court has since clarified that "[i]n a tort action, the question is not whether the parties planned to commit an unintentional act but whether, in the event the unintended contingency occurs, the result, that is, the legal consequence of the unintended act, comports with predictions or expectations of the parties." *Lichter v. Fritsch*, 77 Wis. 2d 178, 252 N.W.2d 360, 363 (Wis. 1977) (citing *Hunker*, 204 N.W.2d 897). Here, defendants, in the course of doing business in Wisconsin, had no reason to expect that the legal consequence of conduct undertaken there would be wrongful death damages that exceed the limitations set by Wisconsin law.

If the scope of a defendant's exposure to damage claims were determined by the residency of tort victims, the result would be unpredictable. The Wisconsin Court of Appeals has held that "the duty of a property owner to maintain his property should not vary depending upon the residence of the person who enters onto the property." *Johnson*, 486 N.W.2d at *2 (citing *Burns*, 409 N.W.2d 428). In other words, a property owner may determine his potential liability without knowing the residency of each future guests. Plaintiffs concede as much. (Br. Opp. Cedar Grove Resort, Inc. & General Casualty Co. Joinder 3.) The same logic applies to the issue of damages. The owner of a Wisconsin resort and those who perform work on that property may reasonably predict that

7

Wisconsin law will govern the scope of their potential exposure to damage claims arising from actions undertaken in that state. Residents of another state who chose to become guests at a Wisconsin resort can reasonably foresee the application of Wisconsin law to disputes arising from their stay. The application of Wisconsin law in this case fosters predictability.

Plaintiffs argue that defendants could not have had a reasonable expectation that their exposure to damages would be limited because Wisconsin law would not limit the damages available to the two decedents if those individuals had merely been severely injured by the explosion. (Br. Opp. 12.) But the fact that the nature and extent of injuries that may result from an accident are unpredictable does not justify adding to the unpredictability by adopting a rule that the law of the state where the injured party resides governs damages. Companies doing business in Wisconsin and insurers who sell them liability policies have every reason to expect that Wisconsin law will govern the nature and extent of their liability when accidents occur there. To the extent they rely on such expectations, applying the law of the state where the injured party may reside to govern damages increases uncertainty and makes it more difficult to determine the extent of their potential liability and take the steps necessary to protect their interests. Here, for example, defendants had no reason to expect they could be subject to the unlimited awards for loss of society and companionship to each child, parent and sibling of deceased resort guests that Michigan law allows. The predictability of results factor favors the application of the Wisconsin Statute.

The second factor relates to the maintenance of international and interstate order. "This factor requires that a jurisdiction which is minimally concerned defer to a jurisdiction that is substantially concerned." *Drinkwater*, 714 N.W.2d at 577. Here, Michigan is a minimally concerned jurisdiction. Michigan, like all states, has in interest in seeing that its citizens who suffer

injuries are compensated for their economic loss. Wisconsin shares this interest and places no limit on the economic damages sustained by the plaintiffs in this case; it limits only the amount and who can recover damages for loss of society and companionship. Plaintiffs concede there is no indication that the application of Wisconsin law would provoke retaliatory action or upset interstate commerce. (Br. Opp. 14.) Wisconsin, on the other hand, has a substantial interest in what law applies to resolve disputes over accidents that occur within its boundaries involving parties who live and work there. To the extent that law impacts decisions people make about whether and how to operate a business and what price to charge for the goods or services sold, application of another state's law supplants the balance of the costs and benefits that Wisconsin's law reflects. Thus, this factor also supports application of Wisconsin law.

The third factor involves the simplification of the judicial task. The Wisconsin Supreme Court "has stated a general rule that the judicial task is rarely simplified when lawyers and judges must apply themselves to foreign law." *Drinkwater*, 714 N.W.2d at 578. The fact that plaintiffs seek application of Michigan law only on the issue of damages adds to the complexity of the task. It is true in any particular case the task may not be difficult. *See Gillette*, 641 N.W.2d at 667 ("A Wisconsin court can easily and simply apply Manitoba law to determine damages in the present case."). But to adopt, in general, a rule that would incorporate the law of the state or country of residence of an injured plaintiff would significantly complicate the judicial task. It would require the court and counsel to familiarize themselves with areas of law in which they have no experience for one part of the case and turn to Wisconsin law for other parts. Where an accident occurs in an area or under circumstances where people from different states are likely to gather, i.e., resorts, hotels, tour buses, trains, aircraft, the court and counsel could be tasked with researching and

9

applying the law of multiple jurisdictions. Juries would be instructed to apply one state's law to determine one plaintiff's injuries and another state's law for another. Of course, that is not the situation that presents itself in this particular case. But for law to have value as a guide to litigants and other courts, it must be capable of more general application than the particular case before the court.

The fourth factor is advancement of the forum's governmental interests. Wisconsin has an interest in compensating those injured by negligent conduct within its borders, whether the tort victims are residents or nonresidents. *Heath v. Zellmer*, 35 Wis. 2d 578, 600-01, 151 N.W.2d 664, 674 (Wis. 1967). Of course, Wisconsin also has an interest in deterring future negligent conduct. *American Standard Ins. Co. of Wisconsin v. Cleveland*, 124 Wis. 2d 258, 369 N.W.2d 168 (Wis. Ct. App. 1985). In rejecting a similar request to apply another state's law governing wrongful death damages instead of Wisconsin's, Judge Gordon stated in *Satchwill v. Vollrath Co.*, 293 F. Supp. 533, 536 (E.D. Wis. 1968), that "[t]he Wisconsin policy behind limited liability in wrongful death cases is to protect Wisconsin defendants from large awards in death cases." But this statement seems too broad. Wisconsin does not limit the damages a jury can award for pecuniary loss in a wrongful death action; it only limits the amount that can be awarded for loss of society and companionship and the relatives to whom such an award can be made. Thus, it would appear that Wisconsin's policy is to protect its citizens and those doing business in the state from the risk of large awards for certain nonpecuniary losses in death cases. Nevertheless, here as in *Satchwill,* "the court cannot be unmindful of the policy underlying Wisconsin's wrongful death limitation." *Id. at 537.* Plaintiffs contend that "application of Michigan wrongful death law would promote both the public policies of Wisconsin and Michigan." (Br. Opp. 18.) However, Wisconsin's interest in

10

providing protection from unlimited awards for loss of society and companionship would be undermined by the application of the Michigan Act in this case. As it is the forum state, it is the advancement of Wisconsin's interests that the fourth factor requires me to consider. Accordingly, I conclude this factor favors the application of Wisconsin law.

The fifth factor requires a court to consider which is the better rule of law. "[T]his factor does not ask judges to exercise a sort of Solomonic superlegislative judgment . . . but instead asks whether the state has made such a determination." *Love*, 439 F. Supp. 2d at 897. As the *Satchwill* court acknowledged, "[n]otwithstanding [plaintiffs'] criticism of wrongful death limitations, the court should not ignore Wisconsin's firmly embedded policy. . . . [A]lthough many feel that no limitation is the better law, it is apparent that the Wisconsin legislature does not agree." 293 F. Supp. at 537. The Wisconsin Statute is "not obsolete or senseless," *Beloit*, 677 N.W. 2d at 309, nor is it "a drag on the coattails of civilization," *Hunker*, 204 N.W.2d at 907. To many, the question "What sum of money will fairly and reasonably compensate one for the loss of his or her child, mother, father, sister?" is nonsensical. Many argue that the loss of a loved one, like pain and suffering in general, is not compensable in money, and allowing a jury to award any amount it chooses for such a loss creates so much uncertainty and risk that reasonable efforts to settle a case are impaired. *See Jutzi-Johnson v. United States*, 263 F.3d 753, 758 (7th Cir. 2001) ("Awarding any amount of damages for pain and suffering has long been criticized as requiring the trier of fact to monetize a loss that is incommensurable with any monetary measure."). In light of these considerations, Wisconsin's decision to cap such damages is not unreasonable. This factor does not displace Wisconsin's rule of law.

None of the above factors favors the application of Michigan law over the law of the forum state of Wisconsin. Wisconsin law will therefore govern the potential recovery of wrongful death damages in this case.

### B. Motion to Dismiss

Defendants urge the court to dismiss all of plaintiffs' wrongful death claims, because "the Amended Complaint asserts claims for damages solely under the Michigan Wrongful Death Act." (Reply 3.) However, "a complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8 of the Federal Rules of Civil Procedure." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992). A complaint may sufficiently raise a claim even if it points to the wrong legal theory. *Id.* Therefore, whether plaintiffs' complaint points to the right statute is unimportant. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). "The real question [is] whether relief [is] possible based on any legal theory," *McDonald v. Household Intern., Inc.*, 425 F.3d 424, 428 (7th Cir. 2005), and whether plaintiffs have pleaded sufficient facts to "plausibly suggest" they are entitled to relief, *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

Even viewing the facts alleged in the complaint in the light most favorable to the plaintiffs, it is apparent that the wrongful death claims asserted by Margaret Higdon's mother, father, and siblings fail to state a claim for which relief may be granted under Wisconsin law. Therefore, these claims will be dismissed. However, the wrongful death claims asserted on behalf of the Higdon's three minor children and the Higdon's estates sufficiently state a claim under the Wisconsin Statute. Accordingly, these claims may proceed.

12

**III. Conclusion**

Wisconsin law governs the availability of wrongful death damages in this case. The motion to dismiss is therefore GRANTED as to the wrongful death claims asserted by James F. Brooks, Margery E. Brooks, Kathleen M. Brooks, and Daniel Brooks. The motion to dismiss is DENIED as to the wrongful death claims asserted by the Estate of Patrick M. Higdon, the Estate of Margaret M. Higdon, James B. Higdon, Patrick J. Higdon II, and Megan E. Higdon.

**SO ORDERED** this   7th   day of December, 2007.

                                                                    s/ William C. Griesbach
                                                                    William C. Griesbach
                                                                    United States District Judge