UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHLEEN BROOKS,

        Plaintiff,

v.                                                Case No. 06-C-996

GENERAL CASUALTY COMPANY
OF WISCONSIN, et al.,

        Defendants.

**ORDER**

Defendant Portside Builders and its insurer, Acuity, have moved to compel production of the settlement agreement reached by all of the other defendants in this case. Portside believes knowledge of the agreement's provisions is crucial to its ability to defendant against what seems an imminent contribution action by several of the settling defendants. These defendants recognize that Portside obviously will need to see the settlement agreement, but they have refused to produce it because Portside has not signed the confidentiality agreement all of the other parties have reached.

The motion to compel will be granted, with the understanding that Portside and Acuity are to keep the agreement confidential. In other words, Portside and Acuity need not agree to be governed by the precise confidentiality terms that the other parties have agreed to, but for the time being they are to treat the settlement agreement as confidential and not disclose its contents to any third parties.

The motion to compel gives the court an opportunity to give guidance and address questions

that have been raised, either explicitly or implicitly, in the numerous recent filings. First, the motion raises the more general question of confidentiality. It is apparent that the plaintiffs and other defendants believe that the terms of the settlement will be kept confidential in this court's proceedings, both with respect to the scheduled settlement approval hearing as well as any future contribution action they may prosecute in this court. Nevertheless, actions in federal courts are not the same as private arbitrations. The Seventh Circuit has cautioned in the plainest terms that the default rule is full disclosure, and only in unusual cases may matters submitted in federal courts be shielded from public view.

> What happens in the federal courts is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification.

*Hicklin Engineering, L.C. v. Bartell,* 439 F.3d 346, 348 (7th Cir. 2006). The fact that the parties themselves (most of them, anyway) have agreed to confidentiality is of little moment:

> Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination). Many a litigant would prefer that the subject of the case-how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on-be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.

*Union Oil Co. of California v. Leavell,* 220 F.3d 562, 567 (7th Cir. 2000); *see also Brown v. Advantage Engineering, Inc.,* 960 F.2d 1013, 1016 (11th Cir.1992) ("[i]t is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for

resolution, it is no longer solely the parties' case, but also the public's case.")

It might be argued that exposing confidential settlement agreements could place a disincentive on settlement in the first place, in violation of courts' firm and longstanding preference that parties settle their disputes amicably. But it could also be argued that the potential for publicity would encourage parties seeking confidentiality to come to a *full* settlement – i.e., one that does not require prosecution of a subsequent contribution action. With respect to a contribution action, it might be that key portions of the settlement could be redacted (e.g., how much each individual plaintiff received or how the payments were structured), but it is difficult to imagine how a district court could rule on the reasonableness of a settlement without explaining to the public what the total damages figures actually were. "The public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nudge the parties to agree to." *Jessup v. Luther,* 277 F.3d 926, 929 (7th Cir. 2002).[1]

As to confidentiality governing approval of a settlement involving minor children, I am satisfied that the reasonable expectation that the parties have in maintaining the confidentiality of their settlement agreement suffices to justify keeping the agreement sealed for now. *See, e.g., Grintjes v. Dole Food Co., Inc.,* 2007 WL 4300428 (E. D. Wis. 2007) (approving minor settlement and ordering settlement documents sealed). Thus, for purposes of the upcoming approval hearing Docket No. 533 (the settlement agreement) will remain sealed, as will any references to the agreement that could reveal the confidences contained therein.

A second issue suggested in the filings by Portside and Acuity is their evident concern that

---

[1] These concerns may be mooted if, as discussed below, the parties opt to pursue a contribution claim in state court instead.

3

this court's determination of reasonableness at the settlement hearing may impact any contribution case against them. That is not true. Let it be clear that if this court approves the settlement agreement, that approval in no way binds any of the defendants not a party to that agreement, nor does it suggest that the amounts in question are reasonable for purposes of a contribution action. It is merely a determination that the agreement's terms constitute a fair and reasonable settlement of the claims of the minor children involved.

A third issue involves the looming contribution action itself. According to the filings, Ferrellgas, Arby and WPS are the three defendants that will be pursuing contribution from Acuity and Portside. At least four of these entities are Wisconsin companies, meaning that Wisconsin entities can be found on both sides of the contribution dispute. Even if the settlement washes out the only basis for federal jurisdiction (diversity), a federal court may have supplemental jurisdiction over such claims under 28 U.S.C. § 1367. Even so, in this case it seems likely that the considerations set forth in § 1367(c) would militate against the exercise of that jurisdiction – assuming subject matter jurisdiction is even proper.[2] Assuming the settlement agreement is approved, the basis for subject matter jurisdiction (the dispute between parties of diverse states) would be eliminated and the court would be asked to essentially referee a matter of state law between several in-state parties – a task that falls well within the § 1367(c) considerations for

---

[2]28 U.S.C. § 1367(c) provides:
The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
    (1) the claim raises a novel or complex issue of State law;
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
    (3) the district court has dismissed all claims over which it has original jurisdiction; or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

4

declining the exercise of supplemental jurisdiction. In advance of the hearing, the parties are directed to consider whether they will be asking this court to resolve any contribution dispute or whether they wish any such action to be dismissed without prejudice and to pursue the matter in state court.[3]

For the reasons given above, the motion to compel is **GRANTED**.

**SO ORDERED** this 25th day of April, 2008.

      s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[3] I am in receipt of the April 25 letter from Atty. Ralph Tease. Given the number of issues that exist and the convenience afforded by having a large number of attorneys present in court on the day of the settlement hearing, I will decline Mr. Tease's request to limit the hearing's scope to the matter of the settlement. That said, I am certain that the settlement issues can be handled prior to any concerns that are of interest only to the defendants, thus affording anyone not affected by such issues the opportunity to leave the hearing at their convenience.